UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ZUBERLON L. WILLIAMS,

        Petitioner,

v.                                Case No. 3:20-cv-1240-BJD-PDB

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

        Respondents.

_____

## ORDER

### I. Status

Petitioner Zuberlon L. Williams, an inmate of the Florida penal system, initiated this action on October 30, 2020, by filing an unsigned, undated Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Petition; Doc. 1). He is proceeding on a signed Amended Petition (AP) (Doc. 6; Doc. 6-1; Doc. 6.2; Doc. 6-3) filed on December 6, 2020.[1] In the AP, Williams challenges a 2015 state court (Duval County, Florida) judgment of conviction for burglary of a dwelling.[2] He raises seven grounds for relief in the

---

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).

[2] For purposes of reference to pleadings and the Appendix, the Court will cite the document and document page numbers assigned by the Court's electronic docketing system.

AP. Respondents submitted a Response to Amended Petition for Writ of Habeas Corpus (Response; Doc. 13). They also submitted an Appendix with Exhibits A-S. <u>See</u> Doc. 13-1 through 13-19. Williams filed a brief in reply (Reply; Doc. 19).

## II. Relevant Procedural History

On October 12, 2015, the State of Florida charged Petitioner by amended information in Case No. 2015-CF-3717 with burglary of a dwelling. (Doc. 13-1 at 50). After a jury trial in October 2015, he was convicted as charged and sentenced to 15 years in prison as a prison releasee reoffender. <u>Id.</u> at 102-108.

Petitioner appealed, raising two issues: (1) the circuit court erred in denying the Appellant's motion for a judgment of acquittal; and (2) the circuit court erred in finding that the Appellant qualified for sentencing as a prison releasee reoffender. (Doc. 13-5). Additional briefing followed. (Doc. 13-6). On June 1, 2017, the First District Court of Appeal (First DCA) per curiam affirmed Petitioner's conviction and sentence. (Doc. 13-7 at 4). Through counsel, Petitioner filed a Motion for Written Opinion and to Certify Conflict (Doc. 13-8 at 2-4). On June 29, 2017, the First DCA denied the motion. <u>Id.</u> at 5. The mandate issued on July 17, 2017. (Doc. 13-7 at 3).

Petitioner filed a pro se motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850 on December 18, 2017. (Doc 13-9 at 5-27).[3] The circuit court entered an Order Directing the State to File a Response and Denying in Part Defendant's Motion for Postconviction Relief, denying grounds 1, 3, 4, 5, and 6, and directing the state to respond to ground 2. Id. at 28-41. The state filed a response to ground 2. Id. at 307-14. In an order filed July 27, 2018, the circuit court denied Petitioner's motion for postconviction relief. Id. at 315-21. In its orders, the court set forth the applicable law regarding postconviction claims of ineffective assistance of counsel, citing Strickland v. Washington, 466 U.S. 668 (1984). (Doc. 13-9 at 29, 316). The court attached portions of the record to its order. Id. at 322-461. Petitioner sought leave to file a reply. Id. at 462-65. The trial court dismissed the motion as moot. Id. at 467-69.

Petitioner filed a notice of appeal. Id. at 470. He filed a pro se brief. (Doc. 13-10). The State filed a notice of no brief. (Doc. 13-11). Petitioner filed a reply brief. (Doc. 13-12).  On April 11, 2019, the First DCA affirmed per curiam the

---

[3] In reciting the procedural history, the Court identifies the date of Petitioner's filings giving him the benefit of the mailbox rule.

trial court's decision without a written opinion. (Doc. 13-13 at 3-4). The mandate issued on May 9, 2019. Id. at 2.

Through counsel, Petitioner filed a state Petition for Writ of Habeas Corpus with the First DCA on March 4, 2019. (Doc. 13-14). He asked that the court grant the writ, vacating the PRR sentence for burglary of a dwelling and remand for resentencing. The state responded (Doc. 13-16), and Petitioner replied (Doc. 13-17). On November 4, 2020, the First DCA granted habeas relief, vacated the sentence imposed for the offense, and remanded the case for resentencing. (Doc. 13-18 at 4-5). The mandate issued on November 25, 2020. Id. at 2.

The circuit court conducted a resentencing hearing on April 5, 2021. (Doc. 13-19 at 72-113). The court sentenced Petitioner to twelve years in prison. Id. at 106. The court entered the corrected sentence on April 5, 2021, nunc pro tunc to December 8, 2015. Id. at 29-34. Petitioner appealed the non-PRR sentence but then voluntarily dismissed the appeal. Williams v. Florida, Case No. 1D2021-1176. As such, the matter is ripe for review.

### III. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla.

4

Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Petitioner's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## IV. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems,

and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such

6

as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 97-98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a

state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet. Richter, 562 U.S. at 102. Thus, to the extent that the petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'"opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Duncan, supra, at 365-366, 115 S. Ct. 887; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to

10

> hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[4] supra, at 747–748, 111 S. Ct. 2546; Sykes,[5] supra, at 84–85, 97 S. Ct. 2497.  A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 132 S. Ct. 1309, 1316 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v.

---

[4] Coleman v. Thompson, 501 U.S. 722 (1991).
[5] Wainwright v. Sykes, 433 U.S. 72 (1977).

11

> Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992)
> (quoting Carrier, 477 U.S. at 488, 106 S. Ct. 2639).[6]
> Under the prejudice prong, [a petitioner] must show
> that "the errors at trial actually and substantially
> disadvantaged his defense so that he was denied
> fundamental fairness." Id. at 1261 (quoting Carrier,
> 477 U.S. at 494, 106 S. Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice,
> there remains yet another avenue for him to receive
> consideration on the merits of his procedurally
> defaulted claim. "[I]n an extraordinary case, where a
> constitutional violation has probably resulted in the
> conviction of one who is actually innocent, a federal
> habeas court may grant the writ even in the absence
> of a showing of cause for the procedural default."
> Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This
> exception is exceedingly narrow in scope," however,
> and requires proof of actual innocence, not just legal
> innocence. Johnson v. Alabama, 256 F.3d 1156, 1171
> (11th Cir. 2001).

---

[6] Murray v. Carrier, 477 U.S. 478 (1986).

<u>Ward</u>, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." <u>Calderon v. Thompson</u>, 523 U.S. 538, 559 (1998) (quoting <u>Schlup</u>, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. <u>Schlup</u>, 513 U.S. at 324.

## C. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003), and <u>Strickland</u>, 466 U.S. at 687).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [<u>Strickland</u>,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that

13

counsel's representation was within the "wide range" of reasonable professional assistance. <u>Id.</u>, at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id.</u>, at 687, 104 S. Ct. 2052.

With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u>, at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." <u>Id.</u>, at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Id.</u>, at 687, 104 S. Ct. 2052.

<u>Richter</u>, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the <u>Strickland</u> test before the other." <u>Ward</u>, 592 F.3d at 1163. Since both prongs of the two-part <u>Strickland</u> test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." <u>Id.</u> (citing <u>Holladay v. Haley</u>, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in <u>Strickland</u>: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we

14

expect will often be so, that course should be followed." <u>Strickland</u>, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." <u>Richter</u>, 562 U.S. at ---, 131 S. Ct. at 788. But "[e]stablishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." <u>Id.</u> (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether that determination was unreasonable — a substantially higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard," then a federal court may not disturb a state-court decision denying the claim. <u>Richter</u>, 562 U.S. at ---, 131 S. Ct. at 788.

<u>Hittson v. GDCP Warden</u>, 759 F.3d 1210, 1248 (11th Cir. 2014); <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's performance mandated by <u>Strickland</u>, the AEDPA adds another layer of deference — this one to a state court's decision — when we are considering whether to grant federal habeas relief from a state court's

decision." <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

As Ground One, Petitioner claims denial of his constitutional rights to a fair trial when the trial court denied his motion for judgment of acquittal when the evidence did not show beyond a reasonable doubt that he had intent to commit another offense other than trespass. AP (Doc. 6 at 5); (Doc. 6-1 at 1). He alleged a similar state law claim on direct appeal (the circuit court erred in denying the Appellant's motion for a judgment of acquittal). Upon review, Petitioner only raised a claim of trial court error. (Doc. 13-5 at 18-20). He did not rely on the United States Constitution or its parts and made no mention of <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979) or its progeny to contend insufficiency of the evidence in violation of the United States Constitution.

The Court finds Petitioner did not properly exhaust the claim raised in Ground One. Indeed, Petitioner did not cite to a violation of federal law, relevant case law, or a constitutional provision to alert the Court he was raising a federal constitutional claim. As noted by Respondents, he has failed

16

to exhaust his state remedies. Response at 19-20. Because any future attempt to exhaust it would be futile, the claim is procedurally defaulted. As Petitioner is procedurally barred from raising Ground One, he must demonstrate cause and prejudice. Petitioner has failed to establish cause and prejudice or that a fundamental miscarriage of justice will result if the Court fails to address the claim on its merits. The Court further finds this is not an extraordinary case as Petitioner has not made a showing of actual innocence rather than mere legal innocence. As such, the Court finds that the claim in Ground One is procedurally defaulted and the fundamental miscarriage of justice exception is inapplicable. Petitioner's procedural default bars this Court's review of Ground One.

Alternatively, this claim is without merit. Ms. Brooke Fuller, defense counsel, moved for judgment of acquittal on the charge of burglary of a dwelling. (Doc. 13-2 at 344-45). She argued that the state failed to prove that at the time Petitioner entered the structure that he had the intent to commit an offense other than burglary or trespass. Id. at 345. She explained:

> We've heard conflicting evidence from the different witnesses that took the stand. Some say that Mr. Williams was sitting on the floor inside of the shed, others said that he was standing up, others said that he was crouching down, a few said that he had his

> hands on some of the tools that were in the shed, specifically the weed-whacker.
>
> However, the State has failed to prove intent to do anything once inside the shed. And based upon that, we are asking the Court for a judgment of acquittal.

Id.

The State responded that two witnesses said Petitioner had his hands on the tools and there is also the matter of his stealthy entry, providing an inference that he had intent to commit a crime. Id. at 346. Ms. Fuller argued it was not a stealthy entry. Id. at 346-48. The court denied the motion finding the instruction on stealth entry would be appropriate, and looking at the evidence in the light most favorable to the State, the State established a prima facie case based on the testimony of Petitioner's handling of the weed-whacker and "maybe something else" and the entry that could be deemed stealthy. Id. at 348-49.

After hearing all of the evidence, the jury found Petitioner guilty of burglary of a dwelling. Id. at 441.  After reviewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found Petitioner committed burglary of a dwelling. See Wilcox v. Ford, 813 F.2d 1140, 1143 (11th Cir. 1987) (given that evidence may give some support to the

18

defendant's theory of innocence, that is not sufficient to warrant habeas relief). Upon review, the evidence at trial was sufficient to convict Petitioner of this burglary of a dwelling offense and there was no denial of a constitutional right. As such, Ground One is due to be denied.

## B. Ground Two

As Ground Two, Petitioner alleges the circuit court erred in finding Petitioner qualified for sentencing as a PRR and therefore sentenced him illegally, in violation of the Sixth, Eighth, and Fourteenth Amendments. AP (Doc. 6 at 6); (Doc. 6-1 at 1). Respondents contend this issue is moot as Petitioner no longer has a PRR sentence. Response at 27. Petitioner concedes this issue, stating in his Reply that he seeks to dismiss entirely Ground Two. Reply at 9. As such, the Court will grant Petitioner's request and dismiss Ground Two with prejudice as Petitioner concedes that the state court vacated his PRR sentence, and this claim should be dismissed in its entirety.

## C. Ground Three

As Ground Three, Petitioner alleges he received the ineffective assistance of counsel and was denied a fair trial with respect to counsel's failure to challenge the State's photographs of the inside of the storage room. AP (Doc. 6 at 8); (Doc. 6-2 at 1). He argues that the photographs taken by a

19

victim the next day were taken after a victim cleaned the storage room, as reflected in a victim's testimony, and did not fairly and accurately represent the area at the time of the offenses. Id.  Petitioner raised a comparable claim in ground one of his postconviction motion. (Doc. 13-9 at 9-11). He argued counsel should have filed a motion to suppress the photographs and prevented their admittance. Id. at 11. The postconviction court summarily denied this claim finding Petitioner's contentions go to the weight of the evidence, not its admissibility. Id. at 29-32. The court opined it was up to the jury to evaluate the evidence and determine what weight, if any, it should be given. Id. at 31. The court found neither deficient performance nor prejudice under Strickland. Finally, the court determined that these photographs did not make the difference in the trial as there were "multiple direct eyewitness accounts presented at trial." Id. at 32.

Respondents contend that Petitioner did not properly exhaust the claim in Ground Three because he failed to invoke one complete round of the state's appellate review process. Response at 30. According to Respondents, Petitioner abandoned the claim on appeal when he failed to raise it in his initial brief, and therefore it is procedurally barred from federal habeas review. Id. In Darity v. Sec'y, Dep't of Corr., 244 F. App'x 982, 984 (11th Cir. 2007), the

20

Eleventh Circuit found a district court erred in determining a petitioner's ineffectiveness claim was procedurally barred because he failed to raise it on appeal of the summary denial of his Rule 3.850 motion. However, the Eleventh Circuit's opinion relied on <u>Webb v. State</u>, 757 So. 2d 608 (Fla. 5th DCA 2000), which the Fifth District Court of Appeal subsequently overturned. <u>See</u> <u>Ward v. State</u>, 19 So. 3d 1060, 1061 (Fla. 5th DCA 2009) (finding that an appellant, who challenged the summary denial of his Rule 3.850 motion, abandoned issues not raised in his appellate brief). <u>See also</u> <u>Maxwell v. State</u>, 169 So. 3d 1264, 1265 n.1 (Fla. 5th DCA 2015) (holding two of the three grounds are deemed abandoned as the defendant failed to raise them in his appellate brief, citing <u>Ward</u>). Here, Petitioner filed a pro se brief on appeal of the postconviction court's summary denial of his postconviction motion, but he did not raise the instant claim in his brief. Doc. 13-10. Therefore, Petitioner seemingly failed to exhaust the claim in Ground Three. Because any future attempt to exhaust the claim would be futile, it is procedurally defaulted. Petitioner has demonstrated neither cause and prejudice to excuse his lack of exhaustion nor demonstrated a fundamental miscarriage of justice has

occurred.[7] As such, the claim in Ground Three is due to be denied as procedurally barred.

To the extent that the First DCA decided the claim on the merits (Doc. 13-13), the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

In the alternative, the Court will address Ground Three.  Petitioner's ineffectiveness claim is without merit because he has shown neither deficient performance nor resulting prejudice. Accordingly, he is not entitled to federal habeas relief on the claim in Ground Three. As noted by Respondents,

---

[7] To the extent Petitioner relies on Martinez contending that his lack of postconviction counsel constitutes cause and prejudice to overcome the procedural bar, Reply at 5, Martinez does not apply where Petitioner raised the procedurally defaulted claim in his postconviction motion but abandoned it on appeal. See Martinez, 566 U.S. at 16 ("The holding in this case does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings[.]").

Petitioner did not establish prejudice as evinced by the record which demonstrates that even if counsel had objected, the motion would have been denied and the photographs entered into evidence. See Response at 31. The postconviction court found the motion would not have been successful and the evidence would not have been excluded. (Doc. 13-9 at 30-31). Upon review, the court properly employed the Strickland standard of review. As such, Petitioner is not entitled to habeas relief on Ground Three.

### D. Ground Four

Petitioner alleges he received the ineffective assistance of counsel and was denied a fair trial with respect to counsel's failure to retain a fingerprint expert for the purpose of testing the weed-whacker for fingerprints and have the expert testify at trial that Petitioner's fingerprints were not found on the garden tool. AP (Doc. 6 at 9); (Doc. 6-2 at 1). In ground three of his postconviction motion, Petitioner alleged a comparable claim of ineffective assistance of counsel. The postconviction court summarily denied this ground. (Doc. 13-9 at 33-35). Initially, the court recognized there was no general duty to retain expert witnesses in order to perform effectively, citing both Crain v. State, 78 So. 3d 1025, 1040 (Fla. 2011) and Richter, 562 U.S. at 111. (Doc. 13-9 at 33-34). The court also noted that the State did not call an expert because

the on-scene officer did not call an evidence technician because he witnessed Petitioner's presence in the storage closet and the officer did not see any evidence to process at the scene. Id. at 34. Even when assuming arguendo defense counsel was somehow deficient in failing to call a fingerprint expert, the court concluded the deficiency "could not have prejudiced Defendant." Id. The court opined:

> This is because Officer Holton's testimony made it clear that the State did not collect any fingerprint or any other physical evidence against Defendant at the scene. As such, even if the hypothetical fingerprint expert testified in exactly the manner Defendant describes in his Motion, such testimony would not have attacked the State's version of events or given the jury any new information to consider.

Id.

In addition, the postconviction court recognized the ways counsel effectively performed within the wide range of reasonable professional assistance under Strickland. (Doc. 13-9 at 34). Through cross-examination defense counsel challenged the State's witnesses' accounts of their encounter with Petitioner and whether or not he was contacting the tools and raised the matter again during closing argument. Id. "As such, the record makes it clear that Defense Counsel drew the jury's attention to the potential weaknesses in

24

the State's offered version of events with respect to Defendant's intent to steal victims' equipment." Id.

The court also recognized that there were practical difficulties with Petitioner's "hypothetical fingerprint expert" being able to obtain anything to form an opinion. Id. at 34-35. Since fingerprints were not obtained at the scene, the likelihood of obtaining any prints was highly unlikely and would certainly be circumspect because of the subsequent handling of the objects and the passage of time. Id. at 35. Invariably, the evidentiary value would be entirely lost as the prints were not lifted at the scene.

On April 11, 2019, the First DCA affirmed. (Doc. 13-13 at 3-4). Thus, to the extent that the First DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

Nevertheless, even if the appellate court's adjudication of the claim is not entitled to deference, Petitioner's ineffectiveness claim is without merit. The record shows the following. No fingerprints were recovered at the scene. Therefore, there was nothing for a fingerprint examiner to review to form an opinion. Further, attempting to lift prints long after the arrest would have presented chain of custody concerns and would significantly reduce any likelihood of relevant findings. Thus, Defense counsels' decision not to obtain a fingerprint expert was within the wide range of professionally competent assistance. Moreover, at trial, counsel used other competent means to challenge the State's witnesses' testimony.

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both deficient performance and prejudice. The Court is not convinced that trial counsel performed deficiently under these circumstances. Even assuming arguendo deficient performance by counsel, Petitioner has not shown any resulting prejudice. Petitioner has not shown a reasonable probability exists that the outcome of the case would have been different if counsel had performed differently. For all of the foregoing reasons, Petitioner is not entitled to habeas relief on the claim in Ground Four.

## E. Ground Five

As Ground Five, Petitioner alleges he received the ineffective assistance of counsel based on counsel's failure to request a jury instruction on the necessity defense. AP (Doc. 6-2); (Doc. 6-3). He alleges that his sole defense at trial was that he was hiding in the shed because he was in fear for his life because he was being chased by gang members who were attempting to rob him. AP (Doc. 6-3). In ground four of his postconviction motion, Petitioner alleged a similar claim of ineffective assistance of counsel. The postconviction summarily denied this ground finding:

> "Florida law is clear that a defendant is entitled to have a jury instruction on any valid defense supported by the evidence. . . . However, a trial judge is not required to give an instruction where there is no nexus between the evidence in the record and the requested instruction." Mora v. State, 814 So. 2d 322, 330 (Fla. 2002) (internal citations omitted). In his Motion, Defendant maintains that [he] was entitled to a jury instruction on the elements of a necessity defense. However, no evidence was educed at trial that would have warranted such an instruction. (Ex. D). Indeed, the defense rested at trial without calling any witnesses or presenting any evidence about Defendant seeking shelter in the storage closet while fleeing from a gang. (Ex. D at 353.) As such, there is no nexus between the evidence in the record and a requested instruction about a necessity defense, and thus, a necessity instruction would have been inappropriate. Just as Defense Counsel is "not ineffective for failing to file a motion sure to be denied," Whitted, 992 So. 2d

27

> at 353,[8] so too is Defense counsel not ineffective for
> failing to ask for a jury instruction that is surely
> unwarranted.

(Doc. 13-9 at 35-36). The First DCA per curiam affirmed the denial of relief without a written opinion. (Doc. 13-13 at 3-4).

The Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

Alternatively, trial counsel cannot be deemed deficient for failing to request a jury instruction that was unwarranted. The defense rested without putting on any evidence. (Doc. 13-2 at 356). As there was no substantive evidence to support such an instruction, counsel did not err in failing to request the necessity instruction:

> Defendant alleges that trial counsel was
> ineffective for failure to request a "necessity defense"

---

[8] <u>Whitted v. State</u>, 992 So. 2d 352 (Fla. 4th DCA 2008).

jury instruction on the burglary charge. "A defendant is entitled, upon request, to a jury instruction on any theory of defense the substantive evidence supports." <u>Rockerman v. State</u>, 773 So. 2d 602, 603 (Fla. 1st DCA 2000). Whether a defendant is entitled to the requested jury instruction is based upon a consideration of the evidence presented at trial without weighing the evidence. <u>Id.</u> The essential elements of the defense of necessity are: (1) the defendant reasonably believed that his action was necessary to avoid an imminent threat of death or serious bodily injury to himself or others; (2) the defendant did not intentionally or recklessly place himself in a situation in which it would be probable that he would be forced to choose the criminal conduct; (3) there existed no other adequate means to avoid the threatened harm except the criminal conduct; (4) the harm sought to be avoided was more egregious than the criminal conduct perpetrated to avoid it; and, (5) the defendant ceased the criminal conduct as soon as the necessity or apparent necessity for it ended. <u>Bozeman v. State</u>, 714 So. 2d 570, 572 (Fla. 1st DCA 1998). Here, the substantive evidence presented at trial does not support Defendant's requested instruction.

<u>Debose v. Sec'y, Dep't of Corr.</u>, No. 1:11-cv-00109-MP-GRJ, 2014 WL 644588, at *5 (N.D. Fla. Feb. 18, 2014) (not reported in F.Supp.3d) (report and recommendation adopted and incorporated by reference).

Based on the record, defense counsel did not perform deficiently by not asking for a jury instruction on the necessity defense. The state court's

rejection of this claim was not an unreasonable application of <u>Strickland</u>.

Therefore, Ground Five is due to be denied.

## F. Ground Six

In his Sixth Ground, Petitioner raises a claim of ineffective assistance of counsel for misadvising Petitioner not to testify at trial. AP (Doc. 6-3). He provides the following supporting facts underlying his claim:

> Petitioner under the advice of trial counsel elected not to testify at his trial. Trial counsel advised Petitioner that due to the extent and nature of his criminal past, it would be detrimental to his case if he got on the stand to tell the jury his version of the events concerning his need to hide from gang members in the alleged victims['] shed. Trial counsel's misadvice [sic] clearly prejudiced Petitioner because it effectively negated any defense Petitioner might have presented. Trial counsel's misadvice [sic] denied Petitioner his due process rights and a fair trial.

<u>Id.</u>

Petitioner raised a similar if not identical claim in ground five his postconviction motion. The postconviction court denied this ground finding the record conclusively establishes that Petitioner knowingly, voluntarily, and intelligently waived his right to testify at trial. (Doc. 13-9 at 36-38). Furthermore, the court found that at the time of trial, Petitioner had thirteen prior felony convictions and three crimes of dishonesty. "On these facts, it can

hardly be contended that no reasonable attorney would have discouraged Defendant from testifying." <u>Id.</u> at 39. Notably, Petitioner's extensive criminal record would have allowed for impeachment and introduction of the sheer number of offenses "would have severely damaged Defendant's standing in the eyes of the jury." <u>Id.</u> The First DCA affirmed. (Doc. 13-13 at 3-4).

To the extent that the First DCA decided the claim on the merits,[9] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

Nevertheless, even if the appellate court's adjudication of the claim is not entitled to deference, Petitioner's ineffectiveness claim is without merit. The right to testify is "located" in the Due Process Clause of the Fourteenth

---

[9] <u>See</u> <u>Wilson</u>, 138 S. Ct. at 1192.

Amendment and the Compulsory Process Clause of the Sixth Amendment and is corollary to the Fifth Amendment's guarantee against compelled testimony. Lott v. State, 931 So. 2d 807, 817-18 (Fla. 2006) (per curiam) (citing Rock v. Arkansas, 483 U.S. 44, 51-52 (1987)). A criminal defendant makes the fundamental decision as to whether to testify in his own behalf. Id. at 817 (citing Jones v. Barnes, 463 U.S. 745, 751 (1983)). Petitioner does not dispute that he voluntarily agreed not to testify on his own behalf.

The record shows defense counsel asked for more time to speak with her client after the close of the state's case. (Doc. 13-2 at 349-50). The court granted additional time. Id. at 350. The record shows that after the break, counsel told the court Petitioner did not plan to testify. Id. at 353. The colloquy with the trial court supports this conclusion. Id. at 353-55. After being placed under oath, Petitioner told the court he had received enough advice from counsel, and Petitioner felt comfortable making his decision. Id. at 353. He expressed no further need to speak with counsel and said he had no further questions. Id. at 353-54. Finally, he announced his decision not to testify. Id. at 354.

The court then inquired as to the following:

> THE COURT: Okay. You know, if you did testify the State would be allowed to present evidence of prior convictions, I think there's been a stipulation as to how many.

32

MS. FULLER: Your Honor, I did discuss with him the number, and that is part of the reason.

THE COURT: Okay. What would be the number, what's your thinking.

MS. FULLER: I believe the State said yesterday it was 13.

THE COURT: I see, okay. Was that what you were going to suggest, Ms. Daza [the prosecutor]?

MS. DAZA: Yes, sir. **He's got 13 felony convictions and three crimes of dishonesty.**

THE COURT: Okay, all right. So, that was something that you'd like to keep away and like to avoid that, okay. **So, we wouldn't allow them to get into the details of what those were**, but that information would be disclosed, okay. But I'll tell them again as well, you've heard me say it one time, and I'll say it again at the end here tomorrow that they should not in any way hold it against you the fact that you exercised your right to remain silent, and that no juror should ever be concerned as to whether the defendant did or did not take the witness stand, they will definitely get that instruction. All right. So, you're comfortable with that then.

THE DEFENDANT: Yes, sir.

Id. at 354-55 (emphasis added).

Under these circumstances, a reasonable attorney would have discouraged a defendant from taking the stand preventing the jury from

33

hearing the defendant is a convicted felon thirteen times over, and had three convictions for crimes of dishonesty. Thus, a reasonable attorney would have discouraged Petitioner from taking the stand as his testimony would be impeachable. The colloquy clearly shows that even if counsel gave some mis-advice, the court provided Petitioner with the information he needed to make an intelligent and knowing and voluntary decision as to whether to testify. In denying post-conviction relief, the trial court reasoned that it would not be unreasonable for defense counsel to discourage Petitioner from testifying to avoid potentially damaging impeachment about multiple prior convictions. Also, importantly, the defense decided not to put on a case and chose a strategy of requiring the state to prove the elements of its case. As such, Petitioner is not entitled to habeas relief on Ground Six.

### G. Ground Seven

In Ground Seven, Petitioner raises a claim of cumulative errors on counsel's part, allegedly depriving Petitioner of a fair trial. AP (Doc. 6-3). Petitioner raised a comparable claim in ground six of his postconviction motion. The court summarily denied this ground finding, "there are not multiple errors to aggregate." (Doc. 13-9 at 39). <u>See</u> Order Denying Defendant's Motion for

Postconviction Relief (Doc. 13-9 at 315-21). The First DCA affirmed. (Doc. 13-13 at 3-4).

As such, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

Alternatively, none of Petitioner's individual ineffectiveness claims warrant relief; therefore, there is nothing to accumulate. See Morris v. Sec'y, Dep't of Corr., 677 F.3d 1117, 1132 (11th Cir. 2012). Petitioner's trial counsel's alleged errors, neither individually nor cumulatively, deprived him of a fair trial or due process. Considering the record, the Court finds that Petitioner is not entitled to federal habeas relief on Ground Seven.

Therefore, it is now

**ORDERED AND ADJUDGED:**

35

1.     Petitioner's request to dismiss Ground Two, contained in his Reply at 9, is **GRANTED** and **GROUND TWO** is hereby **DISMISSED WITH PREJUDICE**.

2.     The Amended Petition (Doc. 6); (Doc. 6-1); (Doc. 6-2); (Doc. 6-3) is **DENIED**, and Ground Two and this action are **DISMISSED WITH PREJUDICE**.

3.     The Clerk of the Court shall enter judgment denying the Amended Petition and dismissing Ground Two and this case with prejudice.

4.     If Petitioner appeals the denial of the Amended Petition,[10] the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

---

[10] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Upon due consideration, this Court will deny a certificate of appealability.

5.     The Clerk of the Court is directed to close this case and terminate

any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 24th day of

October, 2023.


_____

BRIAN J. DAVIS
United States District Judge


sa 10/20
c:
Zuberlon L. Williams
Counsel of Record


37